IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DORCUS WITHERS, # K-63899,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-cv-827-MJR |
| ) | |
| **TIMOTHY VEATH,** ) | |
| **and RICHARD HARRINGTON,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 55-year sentence for murder and a 25-year sentence for attempted murder. He claims that his due process rights were violated when he was found guilty of two disciplinary infractions and punished with four months in segregation, as a result of a hearing that was conducted well beyond the 14-day time limit prescribed by the prison administrative regulations.

More specifically, Plaintiff claims that on April 10, 2013, he was given two separate disciplinary tickets for disobeying a direct order (Doc. 1, p. 6). Each ticket was the result of a separate incident. At that time, Plaintiff was confined in a crisis watch cell at Lawrence Correctional Center ("Lawrence").

On May 1, 2013, Plaintiff was transferred from Lawrence to Menard. The hearing on his disciplinary charges was not conducted until May 16, 2013 (Doc. 1, pp. 6, 10, 13, 17). Defendant Veath chaired the hearing, at which Plaintiff pled guilty to both charges. He was punished with two months in segregation for each charge (for a total of four months), as well as a

six-month demotion to C-grade and restriction on commissary (Doc. 1, pp. 6, 10, 13). Defendant Harrington, as then-warden of Menard, signed off in approval of that disposition.

Plaintiff filed a grievance on the basis that his hearing had been held too late – over a month past the date when his tickets were issued. Ultimately, the Administrative Review Board expunged both disciplinary reports due to non-compliance with the required 14-day timeline for holding the disciplinary hearing (Doc. 1, p. 17). However, that ruling was not made until March 19, 2014, long after Plaintiff had completed serving the full four months in segregation as well as the other punishments imposed.

Plaintiff asserts that both Defendants knew that the time frame violation would result in the tickets being expunged, but that they still allowed him to serve out his full segregation time. He complains that while in segregation, he was held in a cell with a solid steel door, which "aggravated [his] mental state causing [him] to attempt suicide"[1] (Doc. 1, p. 6-7). Also during this period, he was unable to go to the yard or have time out of his cell; and could not use the phone, buy food items from the commissary, go to school, or work.

As relief, Plaintiff seeks compensation for each day he was made to serve in segregation (Doc. 1, p. 8).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

---

[1] Plaintiff does not elaborate further on his suicide attempt or indicate that prison officials' response was in any way deficient.

Because Plaintiff's "convictions" for the April 2013 prison disciplinary infractions were expunged, the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), does not present a bar to seeking damages in a civil rights action. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (the ruling in a prison disciplinary proceeding is a conviction for the purposes of *Heck* analysis). Nonetheless, in Plaintiff's case, the term he served in segregation on the later-expunged charges does not give rise to a constitutional claim.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). However, those circumstances are not present in the instant case. First, Plaintiff bases his claim for denial of procedural due process only on the tardiness of his disciplinary hearing. But untimeliness does not violate the Constitution, even if the timing of the hearing ran afoul of the prison administrative rules. A federal court does not enforce state laws or regulations. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989).

In order to satisfy the Due Process Clause, an inmate must be given advance written notice of the disciplinary charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Here, Plaintiff does not allege that any of the *Wolff* requirements were violated, and his guilty pleas provided ample evidentiary support for the disciplinary actions. In the end, the fact that Plaintiff prevailed in his grievance, when he obtained the March 2014 ruling that expunged

the May 2013 disciplinary infractions, indicates that Plaintiff received the due process he demanded, albeit not as swiftly as he would have preferred.

Even if there had been an unconstitutional flaw in the conduct of Plaintiff's disciplinary hearing, he has no claim that he was deprived of a protected liberty interest. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest

regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). More recently, the Seventh Circuit revisited its observation in *Marion* that six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (quoting *Marion*, 559 F.3d at 698) (internal quotations omitted). It then reviewed the conditions of the plaintiff's confinement, which included being housed behind a solid cell door with an aggressive cellmate, and being limited to once-a-week access to the shower and prison yard. These conditions did not represent an "atypical and significant hardship" in relation to the ordinary conditions prevailing in non-disciplinary segregation.

In Plaintiff's case, he was confined in segregation for four months in all. Four months may be long enough to trigger an inquiry into the conditions of that confinement, if the segregation had been imposed after a procedurally flawed hearing; however, in the context of Plaintiff's total sentence of 55 years, this is doubtful. *See Marion*, 559 F.3d at 697-98 n.2 (70-day segregation period is "relatively short" in the context of a 12-year prison sentence, citing *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)). More to the point, Plaintiff's description of the conditions in his segregation cell does not indicate that he was subjected to any inordinately harsh conditions. The solid cell door, while undesirable, does not by itself create an "atypical" or "significant" hardship. The loss of privileges (phone, yard, etc.) is a normal consequence of placement in segregation, and does not trigger due process concerns. Similarly, the six-month restrictions Plaintiff faced while he was on C-grade and denied commissary did not violate his constitutional rights. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

Again, the disciplinary charges were expunged because prison officials violated their own administrative rules by delaying Plaintiff's hearing for more than 14 days. That delay did not violate the Constitution, nor did the fact that Plaintiff was required to serve his full segregation term before his record was expunged. Accordingly, Plaintiff's complaint fails to state a constitutional claim upon which relief may be granted, and this action shall be dismissed.

## Disposition

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Defendants **VEATH** and **HARRINGTON** are **DISMISSED** from this action with prejudice.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another

"strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e)[2] may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 18, 2014**

s/ MICHAEL J. REAGAN<br>United States District Judge

---

[2] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. FED. R. CIV. P. 59(e).